1 | DAVID J. VANHAVERMAAT, Cal. Bar No. 175761
Email: vanhavermaatd@sec.gov
2 | FINOLA H. MANVELIAN, Cal. Bar No. 180681
E-mail: manvelianf@sec.gov
3 | MARSHALL S. SPRUNG, Cal. Bar No. 188253
E-mail: sprungm@sec.gov
4 | LESLIE A. HAKALA, Cal. Bar No. 199414
E-mail: hakalal@sec.gov
5 | CATHERINE W. BRILLIANT, Cal. Bar No. 229992
E-mail: brilliantc@sec.gov
6 |
Attorneys for Applicant
7 | Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
8 | Michele Wein Layne, Associate Regional Director
John M. McCoy III, Regional Trial Counsel
9 | 5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
10 | Telephone:  (323) 965-3998
Facsimile:  (323) 965-3908

FILED

2009 SEP 25  AM 10: 38

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

IN THE MATTER OF AN APPLICATION
TO ENFORCE ADMINISTRATIVE
SUBPOENAS OF THE


SECURITIES AND EXCHANGE
COMMISSION,

        Applicant,

    v.

ELLIOTT BROIDY,

        Respondent.

Case No. CV09-6980 SVW (RCx)

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF THE
SECURITIES AND EXCHANGE
COMMISSION'S *EX PARTE*
APPLICATION FOR AN ORDER TO
SHOW CAUSE AND APPLICATION FOR
AN ORDER COMPELLING COMPLIANCE
WITH ADMINISTRATIVE SUBPOENAS**

## I.   **INTRODUCTION**

The Securities and Exchange Commission (the "Commission") submits this Memorandum of Points and Authorities in support of its *Ex Parte* Application for an Order to Show Cause and Application for an Order Compelling Compliance with Administrative Subpoenas issued on May 28, 2009; June 15, 2009; and August 11, 2009 (collectively, "the Subpoenas") to Elliott Broidy ("Broidy" or "Respondent"). To date, Broidy has failed to fully comply with the document requests of the Commission's May 28, 2009 and June 15, 2009 subpoenas, and Broidy has failed to appear for testimony on two occasions pursuant to the August 11, 2009 subpoena issued to him. Broidy's failure to comply with the Subpoenas has delayed the Commission's investigation, and an order by this Court is necessary to prevent further delay.

The Commission's staff issued the Subpoenas to Broidy in the ordinary course of a formal investigation into possible violations of the federal securities laws pursuant to Section 20(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77t(a), Section 21(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(a), and Section 209(a) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-9(a).

Because Broidy has provided no legally justifiable argument for his refusal to comply with the Subpoenas, the Commission requests that this Court enter an Order to Show Cause and an order compelling the Respondent to comply forthwith with the lawfully issued subpoenas.[1]

---

[1]   The Commission staff provided notice to Broidy through his Los Angeles County, California counsel of record, Douglas M. Fuchs of Gibson, Dunn & Crutcher LLP, of its Application on September 24, 2009, at approximately 12:15 p.m., in accordance with Local Rule 7-19.1. (Declaration of Leslie A. Hakala ("Hakala Dec."), ¶ 44). Fuchs' contact information is as follows: Gibson, Dunn & Crutcher, LLP, 333 South Grand Avenue, Los Angeles, California 90071, telephone number 213-229-7000.

## II.   STATEMENT OF FACTS

### A.   The Commission's Investigation

On May 27, 2009, the Commission issued a formal order of private investigation (the "Formal Order") entitled *In the Matter of California Public Pension Funds,* Commission File No. LA-3644, pursuant to various provisions of the federal securities laws.[2]  (Declaration of Leslie A. Hakala ("Hakala Dec."), ¶ 4 and Ex. A).  Pursuant to this Formal Order, staff in the Commission's Los Angeles Regional Office is seeking information regarding, among other things, possible violations of the antifraud provisions of the federal securities laws arising out of the investment of money by public pension funds in California ("California Public Pension Funds") with investment management firms and others. (Hakala Dec., ¶ 5).

Commission staff has obtained information indicating that Broidy served as a mayoral appointee to the Board of Fire and Police Pension Commissioners of the City of Los Angeles ("LAFPP Board") from at least 2002 until his resignation on May 7, 2009.  (Hakala Dec., ¶ 6).  Commission staff has also obtained information indicating that Broidy is the founder and chairman of Markstone Capital Group ("Markstone"), a $800 million private equity fund, that California Public Employees' Retirement System ("CalPERS") invested a total of $50 million with Markstone, and that Markstone has obtained investment commitments from more than nine other public pension funds in five other states.  (Hakala Dec., ¶ 7).

### B.   Issuance Of The Subpoenas

Acting pursuant to the Formal Order, on May 28, 2009, and again on June

---

[2]     Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a), Section 21(a) of the Exchange Act, 15 U.S.C. § 78u(a), and Section 209(a) of the Advisers Act, 15 U.S.C. § 80b-9(a).

1  15, 2009, the Commission's staff sent Broidy investigative subpoenas requiring

2  him to produce documents.  (Hakala Dec., ¶ 10 and Ex. 3 (May 28, 2009

3  subpoena); ¶ 12 and Ex. 5 (June 15, 2009 Subpoena)).  Also acting pursuant to the

4  Formal Order, on August 11, 2009, the Commission's staff sent Broidy an

5  investigative subpoena requiring him to appear for testimony.  (Hakala Dec., ¶ 27

6  and Ex. 18).  The Commission served all of these subpoenas on Broidy through his

7  counsel, Gibson, Dunn & Crutcher LLP, at their address in New York City, New

8  York via Federal Express.  (Hakala Dec., ¶ 10 and Ex. 3 at pp. 36-37; ¶ 12 and Ex.

9  5; ¶ 27 and Ex. 18 at pp. 176-77).  Each of the three subpoenas was signed by a

10  person designated as an officer of the Commission by the Formal Order issued on

11  May 27, 2009.  (Hakala Dec., ¶ 4; ¶ 10 and Ex. 3 at p. 12; ¶ 12 and Ex. 5 at p. 83;

12  ¶ 27 and Ex. 18 at p. 157).

13        Broidy's testimony is clearly relevant to the Commission's investigation.

14  Broidy served for approximately seven years as a Commissioner on the LAFPP,

15  one of the largest California Public Pension Funds, and simultaneously founded

16  and served as the chairman of Markstone, a $800 million private equity fund that

17  solicited substantial investments from CalPERS and other California Public

18  Pension Funds.  (Hakala Dec., ¶¶ 6, 7).

19        The production of documents by Broidy is also critical to the Commission's

20  investigation because those documents may provide information about, among

21  other things, certain "pay-to-play" arrangements arising out of the investment of

22  money by California Public Pension Funds with investment management firms and

23  others.  (Hakala Dec., ¶ 5).  For example, the Commission asked Broidy to produce

24  "[a]ll documents concerning payments or material benefits that You have directly

25  or indirectly paid to, or received from, any individual or entity in connection with

26  investments by public pension funds . . . including but not limited to LAFPP . . .

27  and the California Public Employees' Retirement System."  (Hakala Dec., ¶ 12 and

28  Ex. 5 at p. 86).  Clearly, Broidy is a critical source for such key documents,

3

1  particularly given his tenure on the LAFPP and CalPERS' $50 million investment

2  with Markstone. (Hakala Dec., ¶¶ 6, 7). Additionally, a substantial portion of the

3  documents requested are not in the Commission's possession and may not be

4  available from other known sources.

5      **C.**     <u>**Broidy's Noncompliance with the Subpoena for Testimony**</u>

6      The August 11, 2009 subpoena (the "August Subpoena") called for Broidy

7  to provide testimony at the Commission's Los Angeles office on September 1,

8  2009. (Hakala Dec., ¶ 27 and Ex. 18). The Commission's staff had previously

9  asked Broidy's counsel for a mutually convenient testimony date in late August,

10  but Broidy refused to provide one. (Hakala Dec., ¶ 25 and Ex. 16; ¶ 26 and Exs.

11  17, 17A). Broidy failed to appear for testimony on September 1, and failed to

12  provide a valid reason for his nonappearance. (Hakala Dec., ¶ 29 and Ex. 19; ¶ 30;

13  ¶ 31 and Ex. 19A). The Commission's staff agreed to reschedule Broidy's

14  testimony for September 24, 2009. (Hakala Dec., ¶¶ 32-34). Broidy again failed

15  to appear for testimony on September 24, and again failed to provide any

16  legitimate reasons for his continued nonappearance. (Hakala Dec. ¶ 42;

17  Declaration of Alan Leibowitz, ¶¶ 3-6). For a more detailed description of the

18  communications between the Commission's staff and Broidy's counsel regarding

19  Broidy's noncompliance with the August Subpoena, please see the Hakala

20  Declaration at ¶¶ 25-41.

21      **D.**     <u>**Broidy's Noncompliance With the Subpoenas for Documents**</u>

22      The May 28, 2009 subpoena (the "May Subpoena") for documents sent to

23  Broidy by the Commission's staff required him to produce documents by June 12,

24  2009 at the Commission's Los Angeles office. (Hakala Dec., ¶ 10 and Ex. 3)[3] The

25  _____

26  [3]  The Commission's staff sent Broidy a voluntary request for the production of

27     seven categories of documents on April 7, 2009, with a return date of April 21,
   2009. (Hakala Dec. ¶ 9) After the staff granted Broidy an extension until May 5,

28  (Con't.)

1   June 15, 2009 subpoena (the "June Subpoena") for documents required Broidy to

2   produce the same records the staff had previously requested pursuant to the May

3   Subpoena as well as additional documents.  (Hakala Dec., ¶ 12 and Ex. 5).

4   Documents responsive to this subpoena were due on June 27, 2009.  (*Id.*)  Despite

5   numerous extensions and numerous communications with Broidy's counsel over a

6   three-month period, Broidy has produced only some documents responsive to the

7   May and June Subpoenas together with documents that are not required by the

8   May and June Subpoenas.  (Hakala Dec., ¶¶ 9-10, 17, 19).  Additionally, Broidy

9   has refused to provide the Commission's staff with any concrete indication of the

10  overall volume of his production or what percentage remains to be produced.

11  (Hakala Dec., ¶ 23).  Broidy acknowledges that he has responsive documents that

12  remain outstanding.  (Hakala Dec., ¶ 41 and Ex. 24).  For a more fulsome

13  discussion of the Commission staff's communications with Broidy's counsel

14  regarding Broidy's failure to comply with the May and June Subpoenas, please see

15  the Hakala Declaration at ¶¶ 9-25.

16  **III.   ARGUMENT**

17          A.     **This Court Has Jurisdiction Over This Action And Is Empowered**

18                 **To Grant The Relief Sought**

19          Section 22(b) of the Securities Act, Section 21(c) of the Exchange Act, and

20  Section 209(c) of the Advisers Act specifically give this Court jurisdiction over

21  subpoena enforcement actions.  15 U.S.C. § 77v(b); 15 U.S.C. § 78u(c);

22  15 U.S.C. § 80b-9(c).  Moreover, Section 21(c) of the Exchange Act specifically

23  provides that subpoena enforcement actions may be initiated by the Commission's

24

25  2009, Broidy produced one category of documents (his publicly filed financial

26  disclosure forms) on May 1, 2009.  (Hakala Dec. ¶ 9)  Broidy's counsel informed

    the staff that Broidy preferred not to produce the other six categories of

27  documents.  (*Id.*)

28

1    staff upon application to a Court of the United States in any jurisdiction where "such

2    investigation or proceeding is carried on. . . ." Thus, the Commission's Application

3    is properly before this Court because the Commission's Los Angeles Regional

4    Office is conducting this investigation. (Hakala Dec., ¶ 4 and Ex. A).

5            Furthermore, the securities laws authorize the Commission to seek an order

6    from this Court requiring compliance with a subpoena in a summary proceeding.

7    *See SEC v. Sprecher*, 594 F.2d 317, 319-20 (2d Cir. 1979) (holding that summary

8    proceeding to enforce subpoena is appropriate because Section 22(b) of the

9    Securities Act provides that order can be obtained "upon application by the

10   Commission"); *SEC v. McCarthy*, 322 F.3d 650, 655-59 (9th Cir. 2003) (holding

11   that Section 21(e) of the Exchange Act permitting Court to enforce Commission

12   orders "upon application from the Commission" provides for summary

13   proceedings to enforce Commission's enforcement actions).

14       **B.      The Commission's Application For An Order Requiring**

15              **Compliance With Its Subpoenas Should Be Granted**

16           It is well-settled that an administrative agency's investigative subpoenas will

17   be judicially enforced if (1) its "investigation will be conducted pursuant to a

18   legitimate purpose," (2) the subpoena seeks information that "may be relevant to

19   the purpose," (3) "the information sought is not already within the [Commission's]

20   possession," and (4) all "administrative steps required . . . have been followed."

21   *United States v. Powell*, 379 U.S. 48, 57-58, (1964) (enforcing IRS subpoena); *see*

22   *also United States v. Jose*, 131 F. 3d 1325, 1327-28 (9th Cir. 1997) (quoting

23   *Powell*). In this case, all of these requirements are met.

24           First, this inquiry is being conducted pursuant to a lawfully authorized and

25   legitimate purpose. "Congress has vested the [Commission] with broad authority

26   to conduct investigations into possible violations of the federal securities laws and

27   to demand production of evidence relevant to such investigations." *SEC v. Jerry T.*

28   *O'Brien, Inc.*, 467 U.S. 735, 741. The Commission authorized this investigation

                                              6

1    by issuing a Formal Order on May 27, 2009, pursuant to the federal securities laws,

2    to investigate possible violations of the federal securities laws as set forth in the

3    Formal Order.  (Hakala Dec., ¶ 4 and Ex. A).

4          Second, the information sought by the subpoena is relevant to this

5    investigation.  Given Broidy's tenure as a Commissioner of the LAFPP and

6    simultaneous solicitation of investments on behalf of Markstone to California

7    Public Pension Funds, (Hakala Dec., ¶¶ 6-7), the production of documents and

8    testimony by Broidy regarding California Public Pension Funds' investment of

9    money with investment management firms and others are central to this

10   investigation.

11         Third, as discussed above, many of the documents sought from Broidy are

12   not in the Commission's possession.  Further, Broidy may be in possession of

13   critical documents, including drafts, memos, e-mails, correspondence and

14   handwritten notes that may be difficult or impossible to obtain from other sources.

15         Fourth, the Commission's staff has satisfied all administrative prerequisites.

16   The federal securities laws authorize the Commission to designate officers to

17   administer oaths or affirmations, to subpoena witnesses, to compel their

18   attendance, to take evidence, and to require the production of any books, papers, or

19   other documents which the Commission deems relevant or material to its

20   investigation.[4]  The subpoenas at issue were each signed by a person that was

21   designated as an officer of the Commission for purposes of this investigation. (*See*

22   Hakala Dec., ¶ 4; ¶ 10 and Ex. 3 at p. 12; ¶ 12 and Ex. 5 at p. 83; ¶ 27 and Ex. 18 at

23   p. 157).  In addition, the Commission's staff properly served the subpoenas on

24   Broidy's counsel by Federal Express, a method of service specifically authorized

25

26   [4]      Section 19(c) of the Securities Act, 15 U.S.C. § 77s(c), Section 21(b) of the
     Exchange Act, 15 U.S.C. § 78u(b), and Section 209(b) of the Advisers Act, 15
27   U.S.C. § 80b-9(b).

28

                                         7

1   by the Commission's Rules Relating to Investigations.[5]  (*See* Hakala Dec., ¶ 10 and

2   Ex. 3 at pp. 36-37; ¶ 12 and Ex. 5; ¶ 27 and Ex. 18 at pp. 176-77).  Accordingly,

3   the Commission's staff has met all administrative requirements related to the

4   issuance and service of the subpoenas.

5         Given the facts described above, the Commission has carried its initial

6   burden of establishing the validity of its subpoenas and its entitlement to judicial

7   enforcement of the subpoenas.

8         **C.**    **Broidy Has No Justification For His Failure To Comply With The**

9                **Subpoenas**

10         Because the Commission has established that its subpoena was lawfully

11   issued, the burden of proving an affirmative defense to compliance with the

12   subpoena shifts to Broidy.  *See Jose*, 131 F.3d at 1328 (after prima facie case made

13   to enforce investigative summons, heavy burden fell on respondent); *SEC v.*

14   *Blackfoot Bituminous, Inc.*, 622 F.2d 512, 515 (10th Cir. 1980) (respondent has

15   burden of showing a defense to enforcement); *SEC v. Brigadoon Scotch Distr. Co.*,

16   480 F.2d 1047, 1056 (2d Cir. 1973) (burden of showing SEC subpoena is

17   unreasonable is not easily met).  Broidy cannot meet his burden.

18         Broidy has provided no reasonable response for his non-compliance with the

19   Subpoenas.  With respect to Broidy's failure to comply with the Commission

20   staff's subpoenas for documents, he has cited resource limitations, family and

21   business commitments, technical production issues and computer glitches, and the

22   distraction of other regulatory inquiries as excuses for his noncompliance.  (Hakala

23   Dec., ¶¶ 25-42).  Broidy's excuses lack validity given the amount of time that has

24   passed since the issuance of the first subpoena and because Broidy retained a

---

26   [5]    *See* Rule 203.8 of the Commission's Rules Relating to Investigations (17
27   C.F.R. § 203.8) and Rules 150 and 232(c) of the Commission's Rules of Practice
(17 C.F.R. §§ 201.150 & 201.232(c)).

1  national law firm over a year ago to represent him with respect to related public

2  pension fund inquiries.  (Hakala Dec., ¶ 9).

3        With respect to Broidy's failure to comply with the Commission staff's

4  August 11, 2009 subpoena for testimony, he claims that (1) it is unfair for him to

5  have to appear for testimony before his document production is complete; (2)

6  requiring him to appear for testimony while he is potentially subject to criminal

7  liability is unconstitutional; and (3) he did not have adequate notice that a

8  representative from the California Attorney General's office wished to attend the

9  testimony.  (Hakala Dec., ¶ 41 and Ex. 24).  Broidy's reasons for failing to appear

10  for testimony are meritless.  Commission witnesses routinely testify regardless of

11  what documents have or have not been produced.  The Commission staff has

12  repeatedly informed Broidy's counsel that Broidy would have to appear for

13  testimony even if he intended to assert his Fifth Amendment privilege and decline

14  to answer substantive questions.  (Hakala Dec., ¶ 28; ¶ 29 and Ex. 19; ¶ 38).  And

15  the California Deputy Attorney merely left Broidy's counsel a voicemail saying he

16  wanted to attend the testimony.  Broidy has never before raised the issue with the

17  Commission staff, and the Commission staff is willing to withdraw the state

18  official's invitation if it raises any questions.  In short, Broidy has not presented

19  any valid reasons for his disregard of the Commission's Subpoenas.

20       **D.**    **Expedited Consideration Of This Application Is Appropriate**

21        Subpoena enforcement actions, especially in circumstances where a witness'

22  noncompliance is causing substantial interference with the Commission staff's

23  investigative efforts, should be expedited.  *See SEC v. Lavin*, 111 F.3d 921, 926

24  (D.C. Cir. 1997) (noting that subpoena enforcement actions "are generally

25  summary in nature and must be expedited"); *Brigadoon Scotch Distr. Co.*, 480

26  F.2d at 1052-53 (stating that the "Commission must be free without undue

27  interference or delay to conduct an investigation which will adequately develop a

28  factual basis" for its determinations).  In this case, Broidy's refusal to comply with

1  the subpoena is hindering the Commission staff's efforts to determine whether

2  violations of the securities laws have occurred.  Accordingly, expedited

3  consideration by the Court is necessary.

4  **IV.**     **CONCLUSION**

5        For the foregoing reasons, the Commission respectfully urges this Court to

6  enter the proposed Order to Show Cause and the proposed order compelling

7  Broidy to comply with the Commission's administrative subpoenas.

8

9  Dated:  September 25, 2009                Respectfully submitted,

10

11

12                                   Catherine W. Brilliant
                                     Leslie A. Hakala
13                                   Attorneys for Applicant
                                     Securities and Exchange Commission

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10