```
 1                    UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3                               ---

 4

 5    THE HONORABLE STEPHEN V. WILSON, U.S. DISTRICT JUDGE PRESIDING

 6

 7   SECURITIES AND EXCHANGE        )
     COMMISSION,                    )
 8                                  )
              Plaintiff,            )
 9                                  )
        vs.                         )  No.  CV  09-6980-SVW
10                                  )
                                    )
11   ELLIOTT BROIDY,                )
                                    )
12            Defendant.            )
     _____)
13

14

15

16             REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                    LOS ANGELES, CALIFORNIA

18                   MONDAY, FEBRUARY 22, 2010

19

20                      STATUS CONFERENCE

21

22   _____

23               DEBORAH K. GACKLE, CSR, RPR
                   United States Courthouse
24            312 North Spring Street, Room 402A
                Los Angeles, California 90012
25                     (213) 620-1149
```

```
 1   APPEARANCES OF COUNSEL:
 2
 3
 4      For the Plaintiff:
 5
 6           UNITED STATES SECURITIES AND EXCHANGE COMMISSION
             BY:  LESLIE A. HAKALA
 7           BY:  DAVID J. HAVERMAAT
             5670 Wilshire Boulevard, 11th Floor
 8           Los Angeles, California  90036
 9
10
11      For the Defendant:
12
13           DEWEY & LeBOEUF
             BY:  STEPHEN A. BEST
14           1101 New York Avenue NW
             Washington, DC  20005
15
16
17           DEWEY & LeBOEUF
             BY:  PETER ROOT
18           1950 University Avenue, Suite 500
             Palo Alto, California  94303
19
20
21                          - - - - -
22
23
24
25
```

```
 1    LOS ANGELES, CALIFORNIA; MONDAY, FEBRUARY 22, 2010; 2:50 P.M.
 2                             - - - - -
 3
 4              THE CLERK:  Item 15, CV 09-6980, Securities and
 5    Exchange Commission versus Elliott Broidy.
 6              Counsel, please state your appearances.
 7              MS. HAKALA:  Leslie Hakala for the Securities and
 8    Exchange Commission.  With me is David Havermaat.
 9              MR. BEST:  Good afternoon, Your Honor.  Stephen Best
10    for Mr. Broidy, and I put in my pro hac motion this morning.
11              MR. ROOT:  Peter Root on behalf of defendant, as
12    well.
13              MR. BEST:  And also appearing is Mona Hanna from the
14    Michelman firm, and she was here as my sponsor, and she is here
15    to make any personal attestations, if necessary.
16              THE COURT:  All right.  You are admitted --
17              MR. BEST:  Thank you.
18              THE COURT:  -- for these purposes.
19              Now, the court's connection with this case to date
20    has only been to order the deposition of Mr. Broidy.
21              Has that occurred?
22              MS. HAKALA:  Your Honor, Mr. Broidy has appeared for
23    testimony.  Your order also -- and I think where the problem
24    lies -- ordered Mr. Broidy to complete his document production
25    by October 12th, 2009.  We received a letter from counsel that
```

1  day saying that his production was substantially complete.  We
2  did not receive anything after that from Mr. Broidy or his
3  counsel until yesterday.  At about 4:30 p.m., additional
4  materials were emailed me.  I believe there was renewed
5  attention to the issues with the status --
6            THE COURT:  I didn't hear what you said.
7            MS. HAKALA:  With the status conference looming,
8  there was renewed attention.
9            THE COURT:  This is a status conference.  The parties
10 are here to inform me as to where we are in this case.
11           What is the status?
12           MR. BEST:  Thank you, Your Honor.
13           THE COURT:  From defendant's standpoint.
14           MR. BEST:  From the defendant's standpoint, I want to
15 first, before I go into the -- what I would call -- hangnails
16 that are still around, that I am shepherding and commit to Your
17 Honor to be cleaned up within the next week, but this is due in
18 no part whatsoever by Mr. Broidy.
19           This is an unfortunate circumstance that -- there
20 have been changes of counsel, and I would say talking past
21 counsel.  Indeed, on October 12th, Alex Southwell of Gibson,
22 Dunn & Crutcher did write to Ms. Hakala stating that the
23 discovery was substantially complete.  That would have
24 triggered my interest as to what that means, as well, but
25 nobody shepherded that process.

1          I reached out -- just so Your Honor knows, Gibson,
2  Dunn withdrew as counsel for Mr. Broidy in, I think, early
3  November or mid November of 2009.  We replaced -- Dewey &
4  LeBoeuf, Mr. Ferrara and Mr. Clark and I, replaced Gibson, Dunn
5  at that time, and the Michelman firm did come in to assist in
6  the capacity of I think -- in document production efforts and
7  other efforts sometime in the fall of 2009.
8          On October 12th, 2009, Alex Southwell represented to
9  Ms. Hakala that the SEC production was substantially complete.
10 I spoke to Mr. Southwell late last week, Your Honor, to
11 determine whether or not he could represent a -- what is
12 consistent with SEC enforcement practice that, in fact, to the
13 best of counsels' knowledge, that all documents of relevance,
14 excepting those that are being withheld for privilege, have
15 been provided to the SEC.
16         He informed me, Your Honor, that there were two
17 primary issues:  One was that Gibson, Dunn, despite having
18 received a subpoena June 15th of 2009, did not commit
19 themselves to a hard document search.  While electronic
20 documents were searched, no hard document search had been
21 undertaken.
22         The remedy to that, Your Honor -- and this is part of
23 my shepherding of this process and commitment to Your Honor
24 that this will be complete in the next week -- is that
25 Ms. Hanna and her colleagues from the Michelman firm will

1  complete that hard document search this week and make
2  representations to Ms. Hakala and to Your Honor, if Your Honor
3  wishes.
4          The confusion there was that there was a hard
5  document search that was done by Gibson, Dunn in early
6  November.  The Michelman firm and the Markstone employees and
7  Mr. Broidy all thought that that was part and parcel to, as
8  well, the SEC subpoena.  As I learned from Mr. Southwell at
9  Gibson, Dunn, that was not part and parcel to the SEC subpoena,
10 it was part and parcel to the New York attorney general's
11 investigation, and there is not overlap --
12         THE COURT:  So is the end result here your
13 representation that the hard copy discovery will be complete in
14 a week?
15         MR. BEST:  Yes, Your Honor.
16         THE COURT:  And you'll either turn over relevant
17 documents or file the appropriate declaration?
18         MR. BEST:  Yes, Your Honor.
19         THE COURT:  And what's the next step, SEC?
20         MS. HAKALA:  Your Honor, I'm glad to talk about that
21 next, but before -- the one other thing to note is that there
22 are other problems other than just the hard copy document --
23         MR. BEST:  That was the first open issue.
24         THE COURT:  What are the other issues?
25         MR. BEST:  The second is a concern that was

```
 1  expressed --
 2            THE COURT:  Can I just raise a preliminary matter.
 3            MR. BEST:  Yes, Your Honor.
 4            THE COURT:  Even though I'm a judge and there may be
 5  some belief that I don't come to the bench the normal way, that
 6  is, I drop from the celestial bodies, I do read the newspapers
 7  like everyone else.  I'm allowed to; I'm not recused from
 8  reading the newspapers.  So I know that Mr. Broidy has either
 9  pled guilty or has entered into negotiations with the U.S.
10  attorney's office in New York.
11            MR. BEST:  The New York attorney general's office.
12            THE COURT:  Not the --
13            MR. BEST:  No, Your Honor.
14            THE COURT:   -- federal?
15            I see.  I know generally what the allegation is.  So
16  what is the interest of the SEC?  Is he a licensed
17  broker-dealer?  He is?
18            MS. HAKALA:  Your Honor --
19            THE COURT:  What is the end result?  I mean it seemed
20  to me that he pled to rather serious-sounding charges, and
21  why -- I'm not trying to direct the SEC, but why is the SEC
22  even involved?
23            MS. HAKALA:  Why --
24            THE COURT:  Yes.
25            MS. HAKALA:  I understand, Your Honor.  I think there
```

```
 1  are a couple things to note.  One is that Mr. Broidy's firm,
 2  Markstone, which has also entered into an agreement with the
 3  New York attorney general's office, secured a large investment
 4  from the California -- from CalPERS, and there are -- the
 5  officials in New York it appears may have come out in an effort
 6  to influence CalPERS' decision.  There were other people in
 7  California who were involved with that.  Furthermore --
 8            THE COURT:  I read about that.  That's all public
 9  information.
10            MS. HAKALA:  Some of it is --
11            THE COURT:  I've read that in the *Wall Street
12  Journal*.  I mean I know the charge is that he -- the allegation
13  is that he offered or gave gratuities to certain people who
14  were in a position to send some of the funds to his company for
15  investment.  There was no allegation that he misappropriated
16  the funds or committed any fraud with the funds, it was just
17  that he tried to get their business by offering gratuities; and
18  part of the business was from the CalPERS, which is a huge
19  fund.
20            So what is the SEC's interest?
21            MS. HAKALA:  The SEC is concerned about, among -- the
22  other thing that I would note is that Mr. Broidy, during the
23  relevant period, actually served on the board of the
24  Los Angeles Fire and Police Pension Fund and so was also making
25  investment decisions at the same time that he was for Public
```

```
 1   Pension Funds.  He was sort of wearing two hats.
 2          THE COURT:  So what relief are you looking for?  What
 3   relief are you looking for that is not available to the New
 4   York attorney general?
 5          MS. HAKALA:  We are conducting a fact-finding
 6   investigation, and we believe that Mr. Broidy has materials
 7   that are factually relevant to our investigation of conduct by
 8   people in California.  I think it's important to keep in mind
 9   we're not -- it's not that our investigation is in the matter
10   of California Public Pension Funds, but we haven't reached any
11   conclusions about who would be defendants -- this is not a
12   situation where Mr. Broidy is a defendant, that we're engaged
13   in some kind of pretrial discovery.  We pursued subpoena
14   enforcement action because Mr. Broidy has continually -- and I
15   think the subpoena that you may be referring to was in May,
16   actually, of 2009.  We've been trying to get material from
17   Mr. Broidy because he is relevant percipient fact witness --
18          THE COURT:  I understand.  In other words, the
19   proceeding before me is really just to enforce an SEC subpoena.
20          MS. HAKALA:  Yes, Your Honor.
21          MR. BEST:  Yes.
22          THE COURT:  And you're telling me that while there
23   may be some implication of Mr. Broidy to what you're doing,
24   that isn't your sole interest or maybe not even your principal
25   interest.  Your principal interest is sort of the other shoe,
```

```
 1  that is, who was he dealing with in PERS?
 2           MS. HAKALA:  Among others, yes, Your Honor.
 3           THE COURT:  And so you want his testimony.
 4           MS. HAKALA:  He took the Fifth.  He declined to
 5  testify.
 6           THE COURT:  I see.
 7           MR. BEST:  This was prior to the entry of the plea.
 8           THE COURT:  But the fact is that he still has the
 9  Fifth Amendment privilege until there's a judgment, that is,
10  until he has been sentenced.
11           MR. BEST:  That's correct.
12           THE COURT:  So there's no way -- if he has a Fifth
13  Amendment privilege, which I would suspect he does, until there
14  is a judgment, then he has the privilege.
15           So how can I compel to him to testify?
16           MS. HAKALA:  Your Honor, we're not here asking you to
17  compel him to testify.  We did ask you to compel him to appear,
18  and he appeared and asserted his Fifth Amendment privilege, and
19  the Commission -- my colleagues and I certainly respect that --
20           THE COURT:  Where are we now?
21           MS. HAKALA:  The problem that is his document
22  production is woefully incomplete.
23           MR. BEST:  That's an overstatement, I think.
24           THE COURT:  But, in other words, you're going to --
25  you're the new counsel.
```

```
 1            MR. BEST:  Yes, Your Honor.
 2            THE COURT:  You're going to try and be the honest
 3   broker here --
 4            MR. BEST:  Yes, Your Honor.
 5            THE COURT:  -- and get it done.
 6            And so, look, wait to see what you get in a week or
 7   10 days and then re-notice a hearing.
 8            MS. HAKALA:  Certainly, Your Honor.
 9            THE COURT:  Thank you.  Thank you, Your Honor.
10            MR. HAVERMAAT:  Thank you, Your Honor.
11
12
13                      C E R T I F I C A T E
14
15            I hereby certify that the foregoing is a true and
16   correct transcript from the stenographic record of
17   the proceedings in the foregoing matter.
18
19                                          February 25, 2010
20   _____        _____
21     Deborah K. Gackle                        Date
       Official Court Reporter
22     CSR No. 7106
23
24
25
```

*UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA*
*COURT REPORTER DEBORAH K. GACKLE*